UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JAMES SCOTT DALY,<br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant | )<br>)<br>)<br>)  Civil Number 09-CV-1722<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF KARA CHRISTENSON

I, Kara Christenson, do hereby declare and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP) as a Paralegal for the North Central Regional Counsel's Office (NCRCO), stationed at the Federal Medical Center in Rochester, Minnesota (FMC Rochester). I have been assigned to the NCRCO since September 2008. Prior to that time, I was assigned to the Legal Department at FMC Rochester since June 1994. I have been employed by the BOP since March 1992.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the Bureau of Prisons, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. Due to the nature of my official duties, I am familiar with the procedures followed by the NCRCO in responding to the FOIA/PA requests made by the above-captioned plaintiff, James Daly, Register Number 25605-198, which were processed by the NCRCO and are at issue in this lawsuit.

CHRONOLOGY- FOIA Request #07-5059

3. On April 11, 2007, the BOP received FOIA request #07-5059 from the plaintiff. A true and accurate copy of the plaintiff's request is attached hereto as Attachment A.

4. In this request, the plaintiff sought "any notes taken by SIS Officer Ms. Dell and SIA Officer Mrs. Crist during my debriefing." The plaintiff further stated in his request, "Please note, I am only seeking notes taken of questions asked of me and the responses I gave to those questions." In addition, in FOIA Request #07-5059, the plaintiff sought a 14 page handwritten statement he provided to staff in which he outlined all of his knowledge regarding the Aryan Brotherhood. See Attachment A.

5. On April 11, 2007, a letter was sent to the plaintiff acknowledging receipt of his FOIA request. A true and accurate copy of the acknowledgment letter is attached hereto as Attachment B.

6. BOP records show that upon receipt of plaintiff's request, NCRCO staff notified staff at the Federal Correctional Complex in Florence, Colorado (FCC Florence), and requested that a search for responsive records be conducted. FCC Florence staff searched for the records and provided 33 pages of responsive records to NCRCO staff.

7. BOP records show the NCRCO FOIA Processor reviewed the records and determined the records would not be releasable at that time pursuant to Exemption 5 U.S.C. 552(b)(7)(A). At the time of the request, a prosecution was taking place against several members of the Aryan Brotherhood, in the case United States v. Mills, et al, 2:02-CR-00938-DOC-2 (C.D. Cal.). Accordingly, on June 5, 2007, a letter was sent to the plaintiff indicating the requested records were exempt from disclosure under exemption (b)(7)(A). A true and accurate copy of the letter is attached hereto Attachment C.

ADEQUACY OF THE SEARCH- FOIA Request #07-5059

8. Upon receipt of plaintiff's FOIA request # 07-5059, a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request. Staff at FCC Florence were provided with a copy of the plaintiff's request and undertook a search of Special Investigative Supervisor (SIS) files. Four documents totaling 35 pages were obtained. The NCR processed these documents and withheld the four documents in full pursuant to exemption (b)(7)(A), as the plaintiff was in California for the federal trial of several Aryan Brotherhood members at the time of the request. See Attached Vaughn Index.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA
EXEMPTION 5 U.S.C. § 552(b)(7)(A)

9. Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . (F) could reasonably be expected to endanger the life or physical safety of any individual."

10. The Bureau of Prisons is a law enforcement agency. The term "law enforcement officer" is defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc." See, e.g., 5 U.S.C. § 8401(17)(D)(i). Furthermore, BOP employees perform inherently law enforcement functions. They possess the authority to make arrests, 18 U.S.C. §3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. § 511.10-511.12, 552.10-552.14. Additionally, the BOP is tasked with the law

enforcement mission of protecting inmates, staff, and the community.[1] As such, the withheld documents are utilized by BOP staff in carrying out the law enforcement mission of the BOP. To invoke Exemption (b)(7), the BOP must be able to demonstrate that records were compiled for law enforcement purposes. In this case, the records at issue were compiled for law enforcement purposes during the course of SIS office normal operations. Courts have held that Exemption 7's law enforcement purpose encompasses a wide variety of records and information, including investigatory files and file systems. See Deglace, 2007 WL 521896, at *2 (finding DEA records systems pertaining to personnel misconduct, criminal activity, and confidential sources satisfy threshold); Balderrama v. DHS, No. 04-1616, 2006 WL 889778, at *1, *7-9 (D.D.C. Mar. 30, 2006)(explaining that "Pre-Sentencing Investigation Reports," which are routinely prepared regarding all convicted felons during prosecution process, are part of law enforcement file and thus satisfy law enforcement requirement); Butler v. DEA, No. 05-1798, 2006 WL 398653, at *3 (D.D.C. Feb. 16, 2006)(noting that records maintained in DEA's Investigative Reporting and Filing System and in DEA's Operations File satisfy threshold because they contain information on individuals investigated by agency and identities and details regarding confidential sources); Antonelli v. ATF, No. 04-1180, 2006 WL 141732, at *4 (D.D.C. Jan. 18, 2006)(stating that records "maintained in the Prisoner Processing and Population Management/Prison Tracking System and in the Warrant Information Network" were compiled for ATF's law enforcement

---

[1] 18 U.S.C. § 4042 sets out the BOP's general authority: "The Bureau of Prisons, under the direction of the Attorney General, shall (1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."

purposes of processing and transporting prisoners, executing arrest warrants, and investigating fugitive matters, and that they "therefore satisfy. . . [the] threshold requirement"); <u>Maydak v. U.S. Dep't of Justice</u>, 362 F.Supp.2d 316, 323 (D.D.C. 2005)(finding "no dispute" that records involving alleged or actual assaults at federal penitentiary were compiled for law enforcement purposes).

11. Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." The Freedom of Information Reform Act of 1986, often referred to as the 1986 FOIA amendments, lessened the showing of harm required from a demonstration that release "would interfere with" to "could reasonably be expected to interfere with" enforcement proceedings.[2] To apply exemption 7(A), the agency must be able to show that (1) a law enforcement proceeding is pending or prospective, and (2) the release of information about it could reasonably be expected to cause some articulable harm. <u>See, e.g.</u> <u>Scheer v. U.S. Dep't of Justice</u>, 35 F.Supp.2d 9, 13 (D.D.C. 1999).

12. Exemption 7(A) is temporal in nature. <u>See, e.g., Dickerson v. Dep't of Justice</u>, 992 F.2d 1426, 1431 (6th Cir. 1993)(reiterating that when investigation is over and purpose of it has expired, information should be disclosed). At the time of the plaintiff's request 07-5059, a prosecution was taking place against several members of the Aryan Brotherhood, in the case <u>United States v. Mills, et al</u>, 2:02-CR-00938-DOC-2 (C.D. Cal.). The agency determined that the information contained in the records sought could reasonably be expected to interfere with the prosecution.

---

[2] Pub. L. No. 99-570, § 1802, 100 Stat. 3207, 3207-48.

CHRONOLOGY- FOIA Request #09-1908

13.  On December 2, 2008, a request was received from the plaintiff in the BOP's Central Office in Washington, D.C. In this request, Request No. 09-1908, the plaintiff sought: (1) copies of all written statements that he provided to prison officials about the Aryan Brotherhood in the last 3 years; (2) copies of any notes, transcripts, memorandum or reports generated as a result of my debriefing and/or request for protection; (3) copies of any letters, memorandums or reports relating to any information received from other prisoners, or any other source, concerning possible threats to my life or safety; and (4) copies of any reports, memorandums or documents received from the California Department of Corrections describing my cooperation with state prison authorities in the 1980's. I have attached a true and correct copy of Request Number 09-1908 to this declaration as Attachment D.

14.  It appears from the BOP's computerized records that on September 29, 2009, this FOIA request was administratively closed as duplicative of FOIA Request Number 09-6734.

CHRONOLOGY- FOIA Request #09-6734

15.  On April 27, 2009, the agency received FOIA Request Number 09-6734 from the plaintiff. In this request, he sought (1) any handwritten statements he produced and provided to BOP staff between January 2006 and the present which provided information about the Aryan Brotherhood or requested protection and/or separation from the Aryan Brotherhood; (2) copies of any notes, transcripts, memorandums or reports generated in response to James Daly's debriefing and/or request for protection/separation from the Aryan Brotherhood from January 2006 to the present; (3) copies of any letters, notes, memorandums or reports relating to information received or otherwise known about possible threats to James Daly's life or well being received or intercepted from other prisoners, federal or state agencies or from any

and all other sources; and (4) copies of any reports, memorandums, documents or other communications the Bureau of Prisons has received from the California Department of Corrections and Rehabilitation describing or otherwise informing the Bureau of Prisons of James Daly's cooperation with California Prison Officials in the 1980's and/or possible threats to his life. In this request, the plaintiff sought expedited processing of his request. I have attached a true and correct copy of FOIA Request Number 09-6734 to this declaration at Attachment E.

16. On May 1, 2009, the NCRCO sent a letter to the plaintiff acknowledging receipt of his FOIA Request Number 09-6734. I have attached a true and correct copy of this letter to this declaration as Attachment F.

17. On May 4, 2009, the NCRCO sent a letter to the plaintiff addressing his request for expedited processing, and denying his request. I have attached a true and correct copy of this May 4, 2009, letter to the plaintiff as Attachment G.

18. NCRCO sent FOIA Request Number 09-6734 to FCC Florence and requested staff search for any responsive documents. FCC Florence staff searched for the records and provided 99 pages of responsive records to NCRCO FOIA staff. On October 19, 2009, these records were reviewed by NCRCO FOIA staff. The NCRCO FOIA staff processed these documents and withheld portions of 5 (five) of the pages pursuant to exemptions (b)(7)(C), (b)(7)(F), (b)(7)(E), (b)(2)(High), and (b)(5).

19. On October 19, 2009, a letter was sent to the plaintiff providing him with 99 pages of documents, with five of those 99 pages contained redactions. I have attached a true and correct copy of the NCRCO October 19, 2009, response letter to the plaintiff hereto as Attachment H.

20. On October 20, 2009, the plaintiff signed acknowledging he received these documents. I have attached a true and accurate copy of this signed acknowledgment hereto as Attachment I.

ADEQUACY OF THE SEARCH- FOIA Request #09-6734

21. Upon receipt of plaintiff's FOIA request # 09-6734, a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request. Staff at FCC Florence were provided with a copy of the plaintiff's request and undertook a search of Special Investigative Supervisor (SIS) files. Ninety-nine (99) pages of responsive documents were obtained and provided to the NCRCO. The NCRCO processed these documents and withheld portions of 5 (five) of the pages pursuant to exemptions (b)(7)(C), (b)(7)(F), (b)(7)(E), (b)(2)(High), and (b)(5). See Attached Vaughn Index.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA
EXEMPTION 5 U.S.C. § 552(b)(7)(C)

22. Title 5, United States Code, Section 552(b)(7)(C) (hereinafter Exemption 7(C)) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy..." 5 U.S.C. § 552 (b)(7)(C).

23. In this case, Exemption 7(C) of the FOIA was asserted to protect the identity of third-party individuals, the release of which could subject them to an unwarranted invasion of personal privacy. Release of the information could subject them to unanticipated, and unwanted injury to their reputation. Specifically, this exemption was applied to redact the names of inmates referred to within document 2 on the Vaughn Index, the SIS Protective Custody

Investigation Memo, document 3, the SIS staff memo to the Case Management Coordinator (CMC), and document 4, the undated staff memo. These individuals whose names were redacted have a privacy interest in their identities in connection with the Protective Custody investigation.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

EXEMPTION 5 U.S.C. § 552(b)(5)

24. Title 5, United States Code, Section 552(b)(5) (hereinafter "Exemption 5") protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party... in litigation with the agency." In other words, this exemption protects documents normally privileged in the civil discovery context. As a threshold matter, the record must be "inter-agency or intra-agency memorandums," which encompasses only documents generated by an agency and not circulated beyond the executive branch.

25. The memorandum in which Exemption (b)(5) is applied is an internal BOP memorandum regarding whether a particular inmate needs additional protections within the BOP system. This memorandum is an internal, intra-agency document.

26. The purpose of this memorandum is for investigative staff to communicate to the Warden regarding an individual inmate's need for additional protections. The recommendation at the conclusion of the memorandum is exempted under (b)(5). See Maydak v. U.S. Dep't of Justice, 362 F.Supp.2d 316, 326 (D.D.C. 2005)(protecting information concerning federal inmate that was used by Bureau of Prisons officials as part of continuing process of making decisions regarding inmate's status). This memorandum aids the Warden in determining whether a specific inmate warrants protective custody.

27. Portions of this memorandum were redacted. Specifically, staff internal conclusions and

recommendations were redacted. These conclusions were written to advise the Warden of whether, in the opinion of the write, that a certain inmate needed additional protection.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

EXEMPTION 5 U.S.C. § 552(b)(2)(High)

28. Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

29. Exemption "high" (b)(2) was applied to portions of the Special Investigative Supervisors (SIS) Protective Custody Investigation Memorandum. This exemption was applied to omit the name of a specific Central Inmate Monitoring assignment (CIM). There are six different broad CIM assignments with various specific assignments under each of these six broad categories. Inmates who receive a CIM assignment are advised of their broad assignment but are not provided information concerning the specific assignment.

30. These assignments are utilized within the BOP to identify inmates who have a verified need for enhanced monitoring or protection from other inmates for various reasons including gang/disruptive group affiliation, cooperation issues, etc. These assignments are also utilized by the BOP to manage the inmate population to ensure one disruptive group is not overpopulated at any given institution which could jeopardize the safety and security of that institution. This exemption was also applied to redact staff statements relating to internal BOP classification, recommendations regarding the need for protective custody within the BOP system.

JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

EXEMPTION 5 U.S.C. § 552(b)(7)(F)

31. Exemption (b)(7)(F) provides for the withholding of information or records compiled for law

enforcement purposes the release of which could endanger the life or physical safety of any individual. The Bureau of Prisons is a law enforcement agency. Exemption (b)(7)(F) was applied to redact the names of inmates referred to within the SIS Protective Custody Investigation Memorandum. Revealing their names, and thus their involvement with this security threat group ("gang"), would reasonably be expected to cause them harm.

32. Similarly, exemption (b)(7)(F) was applied to redact the names of inmates referred to within an SIS Staff Memo to the Case Management Coordinator. Revealing their names to the public, showing their involvement with this security threat group would reasonably be expected to cause them harm.

33. Exemption (b)(7)(F) was also applied to redact the names of inmates referred to within document 4, an undated note from one staff to another staff because the note indicated that inmate's involvement with a security threat group. Revealing the names and thus their involvement with this security threat group would reasonably be expected to cause them harm.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 30th day of November, 2009.

Kara Christenson
FOIA Paralegal
Federal Bureau of Prisons