IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-01722-PAB-BNB

JAMES SCOTT DALY,

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the defendant's **Motion for Summary Judgment** [Doc. # 48, filed 03/31/2010]. I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of the pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).  The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 447 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum ("ADX").  He filed his Amended Complaint on January 4, 2010 [Doc. #39] (the "Complaint").  The Complaint alleges that in November 2006, the plaintiff provided to prison officials information about Aryan Brotherhood gang activities.  *Complaint*, p. 2.  Since that time, prison officials have done nothing to protect him, and his life is in danger.  Id.  Beginning in April 2007, the plaintiff submitted repeated requests to the BOP

2

pursuant to the Freedom of Information Act ("FOIA") for documents relating to his cooperation with prison officials and his need for protection.  Id. at pp. 3-4.

The Complaint asserts five claims pursuant to FOIA.  Claim One alleges that the BOP failed to timely comply with the plaintiff's document requests.  Claim Two alleges that the BOP improperly denied the plaintiff's request for expedited processing of his document requests.  Claim Three alleges that the BOP's disclosures are incomplete because the BOP failed to conduct an adequate search for all of the requested records.  Claim Four alleges that the BOP improperly exempted documents from its disclosure.  Claim Five alleges that the BOP wrongfully redacted portions of some documents.

### III.  UNDISPUTED MATERIAL FACTS

1.   On April 11, 2007, the BOP received the plaintiff's first FOIA request ("Request #07-5059").  *Motion*, p. 1, ¶ 1; Ex. A-1, ¶ 3 and Attachment B; *Complaint*, p. 4, ¶ 13 and Doc. #39-2.[1]  The plaintiff requested copies of any notes taken by Special Investigative Supervisor ("SIS") Officer Dell and Special Investigative Agent ("SIA") Officer Crist during his interview at ADX on November 17, 2006.  *Motion*, p. 1, ¶ 1; Ex. A-1, ¶ 4 and Attachment A; *Complaint*, p. 4, ¶ 13 and Doc. #39-1.  He further requested a copy of a hand-written fourteen page statement he submitted to the officers on or about November 20, 2006.  Id.

2.   BOP staff conducted a search of the SIS files and located thirty-three pages of responsive documents.  *Motion*, p. 2, ¶ 2; Ex. A-1, ¶ 6; *Plaintiff's Response to Defendant's Motion for Summary Judgment* [Doc. #57] (the "Response"), p. 1, ¶ 1.  At the time of the

---

[1]The labels of the Complaint's exhibits are visible only on the original documents. Therefore, I cite to the document and page numbers of the exhibits as assigned by the court's docketing system.

plaintiff's request, a prosecution was taking place against several members of the Aryan Brotherhood in the case of United States v. Mills, 2:02-CR-00938-DOC-2 (C.D. Cal.). *Motion*, Ex. A-1, ¶ 7.[2]  By letter dated June 5, 2007, the plaintiff was informed that the requested documents were exempt from disclosure under "Exemption (b)(7)(A)," which "exempts from disclosure records or information compiled for law enforcement purposes which could reasonably be expected to interfere with law enforcement proceedings." *Motion*, p. 2, ¶ 2; Ex. A-1, ¶ 7-8; Attachment C; *Complaint*, p. 4, ¶ 15 and Doc. #39-3, p. 2.  The plaintiff was told he could resubmit his request after law enforcement proceedings had been completed. *Motion*, Ex. A-1, Attachment C; *Complaint*, p. 4, ¶ 15 and Doc. #39-3, p. 1.

      3.   The plaintiff submitted a second FOIA request ("Request #09-1908") on November 24, 2008.  The request was received in the BOP's Central Office in Washington, D.C. on December 2, 2008. *Motion*, p. 2, ¶ 3; Ex. A-1, ¶ 13 and Attachment D; *Complaint*, p. 4, ¶¶ 16-17 and Doc. #39-4.  The plaintiff sought the following information: (l) copies of all written statements he provided to prison officials about the Aryan Brotherhood in the last 3 years; (2) copies of any notes, transcripts, memoranda, or reports generated as a result of his interview and/or requests for protection; (3) copies of any letters, memoranda, or reports relating to any

---

[2]The plaintiff states that the Mills case was complete at the time the BOP withheld the documents, *Response*, p. 1, ¶ 1, but he does not provide any evidence to support this statement. To the contrary, at the time the plaintiff submitted FOIA Request #07-5059, the Mills case was in the penalty phase. United States v. Mills, 446 F.Supp.2d 1115 (C.D. Cal. 2006).  On August 17, 2006, an order was issued in the Mills case (Case No. 2:02-CR-00938-DOC-2) which addresses the defendants' right to confront witnesses throughout the penalty phase of the trial. Id.  When viewing the order on Westlaw, it is followed by a list of the motions, pleadings, and filings submitted in the case.  The Government's proposed jury instructions and verdict form for the sentencing phase were submitted on August 9, 2008.  Thus, the case was on-going as late as August 2008.

information received from other prisoners, or any other source, concerning possible threats to his life or safety; and (4) copies of any reports, memoranda or documents received from the California Department of Corrections describing his cooperation with state prison authorities in the 1980's. *Motion*, Ex. A-1, ¶ 13 and Attachment D; *Complaint*, pp. 4-5, ¶ 16 and Doc. #39-4.

4.   On September 29, 2009, Request #09-1908 was administratively closed as duplicative of FOIA Request #09-6734. *Motion*, p. 2, ¶ 3 and Ex. A-1, ¶ 14; *Complaint*, p. 5, ¶ 17.

5.   The plaintiff submitted FOIA Request #09-6734 on April 22, 2009.  This request sought (1) any handwritten statements he produced and provided to BOP staff between January 2006 and the present which provided information about the Aryan Brotherhood or requested protection and/or separation from the Aryan Brotherhood; (2) copies of any notes, transcripts, memoranda, or reports generated in response to his interview and/or request for protection/separation from the Aryan Brotherhood from January 2006 to the present; (3) copies of any letters, notes, memoranda, or reports relating to information received or otherwise known about possible threats to his life or well being received or intercepted from other prisoners, federal or state agencies, or from any and all other sources; and (4) copies of any reports, memoranda, documents, or other communications the Bureau of Prisons has received from the California Department of Corrections and Rehabilitation describing or otherwise informing the Bureau of Prisons of his cooperation with California prison officials in the 1980's and/or possible threats to his life.  The request was received by the BOP on April 27, 2009.  The plaintiff sought expedited processing of this request. *Motion*, pp. 2-3, ¶ 4; Ex. A-1, ¶ 15 and Attachment E; *Complaint*, p. 5, ¶ 18 and Doc. #39-5.

6.   On May 1, 2009, the BOP North Central Regional Counsel's Office sent the plaintiff a letter acknowledging receipt of FOIA request #09-6734.  *Motion*, Ex. A-1, ¶ 17 and Attachment F; *Complaint*, pp. 5-6, ¶ 19 and Doc. 39-6.

7.   On May 4, 2009, the BOP denied the plaintiff's request for expedited processing of FOIA request #09-6734.  *Motion*, p. 3, ¶ 5; Ex. A-1, ¶ 17 and Attachment G; *Complaint*, p. 6, ¶ 20 and Doc. 39-7.

8.   The BOP North Central Regional Counsel's Office sent FOIA Request #09-6734 to the Federal Correctional Complex ("FCC") in Florence, Colorado, and requested that the staff search for any responsive documents.  FCC Florence staff provided 99 pages of responsive records to the FOIA staff at the North Central Regional Counsel's Office.  The FOIA staff processed the documents and withheld portions of five of the pages pursuant to exemptions (b)(7)(C), (b)(7)(F), (b)(7)(E), (b)(2)(High), and (b)(5).  *Motion*, p. 3, ¶ 6; Ex. A-1, ¶ 18.

9.   On October 19, 2009, the North Central Regional Counsel's Office sent the plaintiff a letter providing him with the 99 pages of documents, with five of those pages containing redactions.  The plaintiff acknowledged receipt of the 99 pages on October 22, 2009.  *Motion*, p. 3, ¶¶ 6- 7; Ex. A-1, ¶¶ 19-20 and Attachments H and I; *Complaint*, p. 6, ¶ 24.

10.   The documents that the plaintiff requested in FOIA Request #07-5059 were provided to him under FOIA Request #09-6734 because the criminal prosecution which prevented their initial disclosure was resolved at the time the BOP responded to FOIA Request #09-6734.  *Motion*, p. 3, ¶ 8 and Ex. A-2, ¶¶ 5-9.

## IV.  ANALYSIS

For the sake of clarity, I address Claims Three and Five prior to addressing the plaintiff's other claims.

### A.  Claim Three

Claim Three alleges that the BOP failed to conduct an adequate search for all of the requested records.  It is the FOIA defendant's burden to show that its search for responsive documents was reasonable.  Patterson v. Internal Revenue Service, 56 F.3d 832, 841 (7th Cir. 1995).  "In discharging this burden [to show the adequacy of its search], the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search.  In the absence of countervailing evidence or apparent inconsistency of proof, such affidavits will suffice to demonstrate compliance with the obligations imposed by the FOIA."  Trentadue v. F.B.I., 572 F.3d 794, 807 (10th Cir. 2009) (quoting Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 547 (6th Cir.2001)).  In particular:

> [T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search.  The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate, which is determined under a standard of reasonableness, and is dependent upon the circumstances of the case.  The reasonableness of an agency's search turns on the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives.

Trentadue, 572 F.3d at 797-98 (internal citations and quotations omitted).

The defendant has provided the Declaration of Margie Bier, Paralegal Specialist for the Legal Department at the Federal Correctional Complex in Florence, Colorado.  *Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* [Doc. #60] (the "Reply"),

Ex. A-3, ¶ 1.  The plaintiff's FOIA Request #09-6734 was forwarded to Ms. Bier to search for responsive documents.  Id. at ¶ 3.

Ms. Bier interpreted the plaintiff's FOIA request as seeking documents regarding his participation in the investigation of the Aryan Brotherhood; his cooperation with federal and state law enforcement authorities; and threats against his life and investigations into those threats, whether initiated by the plaintiff or by third parties.  Id. at ¶ 4.  Based on her experience as a Legal Instruments Examiner and Paralegal for the BOP; her experience in processing FOIA requests; her familiarity with the documents maintained by the BOP; the fact that the SIS Department acts as a liaison for all outside law enforcement agencies; and the fact that the SIS Department is responsible for investigating inmate and staff misconduct within the institution, monitoring gang activity within the institution, gathering intelligence on criminal activities, and investigating threats to the safety of inmates and staff, Ms. Bier determined that a search of the files maintained by the SIS Department at the ADX would be reasonably calculated to uncover the requested documents.  Id. at ¶¶ 5-6.

Ms. Bier searched the SIS files and located the 99 pages responsive to the plaintiff's FOIA Request #09-6734.  Id. at ¶ 7.  There was no documentation from the California Department of Corrections and Rehabilitation located in the SIS files.  Id.  Ms. Bier forwarded the responsive documents to the FOIA processor for the North Central Regional Counsel's Office.  Id.

The plaintiff claims that the BOP "had a professional responsibility to investigate the crimes and conspiracies of the Aryan Brotherhood that I provided them information about" and "[n]one of these investigative reports were disclosed as requested."  *Declaration of James Daly*

[Doc. #58], ¶ 6.  He further claims that the BOP "has a statutory obligation to protect prisoners" and to investigate the information he provided them in order to determine his protective custody needs, but the BOP failed to disclose "any of the investigative reports used to reach its determination on [his] custody needs."  Id. at ¶ 7.  The plaintiff also complains that the "BOP failed to disclose a January 5, 2007, letter in which I was said to have sent SIS officers claiming he no longer had a need for protective custody."  Id. at ¶ 8; Complaint, pp. 10-11, ¶ 42.  Finally, the plaintiff states that "SIS Officers claim to have contacted the California Department of Corrections concerning my 'claims' that I cooperated with them in 1985 or 1986.  This communication, in whatever format it occurred, was not disclosed as required under FOIA." Declaration of James Daly, ¶ 9; Complaint, p. 11, ¶ 43.

The plaintiff does not allege that these documents actually exist; he merely assumes they exist.  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Trentadue, 572 F.3d at 808 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C.Cir. 1991)).

The plaintiff also complains that he did not receive communications intercepted from a defense team to an inmate about the plaintiff's cooperation with law enforcement agencies, Declaration of James Daly, ¶ 10; notes or kites that have been recovered that identify the plaintiff as a target of the Aryan Brotherhood, Declaration of James Daly, ¶ 10; a letter the plaintiff sent to the warden on May 17, 2009, seeking protective custody, Declaration of James Daly, ¶ 11; Complaint, p. 11, ¶ 44; two separate requests for administrative remedies filed by the plaintiff in 2009 (No. 542162 and 528470) raising issues regarding protective custody and

hostile living conditions and/or investigative reports generated in response to these requests, *Declaration of James Daly*, ¶ 12; *Complaint*, p. 11, ¶ 45; several written requests the plaintiff sent to SIS Officer Dell and/or SIA Officer Crist between November 2006 and April 2007 which inquired about the status of the plaintiff's protective custody request, the investigation of information the plaintiff provided to prison officials, and the BOP's inquiries into plaintiff's past cooperation with California prison officials, *Complaint*, p. 10, ¶ 40; and several inquiries the plaintiff made to SIS Officer Dell and SIA Officer Crist regarding whether they had informed the United States Attorney's office of his cooperation, *Complaint*, p. 10, ¶ 41.

Reasonableness does not require an agency to search every record system or produce all relevant material.  The agency must instead show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. United States Dept. of Army, 920 F.2d 57, 68 (D.C.Cir.1990).  "However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  Id.

It is undisputed that the SIS Department is responsible for investigating inmate and staff misconduct within the institution, monitoring gang activity within the institution, gathering intelligence on criminal activities, and investigating threats to the safety of inmates and staff. Therefore, a search of the files maintained by the SIS Department was reasonably calculated to uncover the documents requested by the plaintiff.[3]

---

[3]The record does not contain any argument or evidence to show that other relevant files exist that should have been searched or that alternative search methods exist that should have been used.

10

**B. Claim Five**

In Claim Five, the plaintiff challenges the redactions of the documents disclosed in response to his FOIA Request #09-6734. *Complaint*, p. 14. FOIA generally requires federal agencies to disclose agency records to the public upon request, subject to nine exemptions that protect certain types of documents from disclosure. Stewart v. U.S. Dept. of Interior, 554 F.3d 1236, 1239 (10th Cir. 2009); 5 U.S.C. 552(b). The government agency bears the burden of justifying its decision to withhold documents or portions of documents. Id. at 1239. FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed. Anderson v. Dep't of Health and Human Servs., 907 F.2d 936, 941 (10th Cir. 1990).

The district court reviews *de novo* an agency's decision to withhold requested information. 5 U.S.C. § 552(a)(4)(B); Anderson, 907 at 941. On review, the district court may utilize "*in camera* review of the disputed documents, indexing, oral testimony, detailed affidavits, or alternative procedures to determine whether a sufficient factual basis exists for evaluating the correctness of the [agency] determination in each case." Anderson, 907 at 942.

A "Vaughn index" is often used for reviewing the agency's decision. Id. A Vaughn index is a compilation prepared by the agency which lists each of the documents that were withheld (in whole or in part) and explains the asserted reason for nondisclosure. Id. at 940, n.3; Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973) (1974).

If the agency's Vaughn index and affidavits are reasonably clear, specific, and detailed, the court normally affords agency determinations substantial weight. Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1104-05 (D.C.Cir. 1982); Vaughn v. Rosen, 484 F.2d 820.

An agency may not, however, rely on documents which provide insufficient detail, lack specificity, and offer only conclusory statements.  Anderson, 907 F.2d at 942.

The defendant has submitted a Vaughn index [Doc. #29-1] (the "Vaughn Index") and the supporting Declaration of Kara Christenson [Doc. #29-2] which show that 13 documents totaling 99 pages were released to the plaintiff.  *Vaughn Index*, pp. 2-6; *Declaration of Kara Christenson*, ¶ 19.  Document 1 and Documents 5 through 13 were released in full.  *Vaughn Index*, pp. 2-6.  Documents 2, 3, and 4 contain a total of five pages that have information redacted.  Id.; *Declaration of Kara Christenson*, ¶ 19.

### 1.   Document 2

Document 2 is an SIS Protective Custody Investigation Memorandum (the "Investigation Memorandum") consisting of 5 pages.  *Vaughn Index*, p. 2.  The Investigation Memorandum is an internal BOP memorandum which addresses whether a particular inmate needs additional protections within the BOP system.  The purpose of the Investigation Memorandum is for investigative staff to communicate to the Warden regarding the inmate's need for additional protections.  *Declaration of Kara Christenson*, ¶¶ 25-26.  The defendant applied several exemptions to discreet portions of Document No. 2.

### a.   Exemption (b)(2)(High)

Exemption (b)(2)(High) was applied to omit the name of a specific Central Inmate Monitoring ("CIM") assignment.  *Vaughn Index*, p. 2; *Declaration of Kara Christenson*, ¶ 29.  Under exemption 2, records that are "related solely to the internal personnel rules and practices of an agency" are exempt from disclosure.  5 U.S.C. § 552(b)(2).  Courts have separated Exemption 2 into "low 2" and "high 2" information:

> Exemption 2 . . . applies to material used for predominantly internal purposes.  If the threshold test of predominant internality is met, an agency may withhold the material by proving that either (1)  disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest.  Predominantly internal documents the disclosure of which would risk circumvention of agency statutes and regulations are protected by the so-called "high 2" exemption. Predominantly internal documents that deal with trivial administrative matters fall under the "low 2" exemption.

Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir.1992) (internal quotations and citations omitted except as noted).

The defendant states that there are six broad CIM assignments with various specific assignments under each of these six broad categories.  Inmates who receive a CIM assignment are advised of their broad assignment but are not provided information concerning the specific assignment.  The assignments are used within the BOP to identify inmates who have a verified need for enhanced monitoring or protection from other inmates for various reasons including gang/disruptive group affiliation and cooperation issues.  The assignments are also used to manage the inmate population to ensure one disruptive group is not overpopulated at any given institution which could jeopardize the safety and security of that institution.  This exemption was also applied to redact staff statements relating to internal BOP classifications and recommendations regarding the need for protective custody.  *Vaughn Index*, pp. 2-3; *Declaration of Kara Christenson*, ¶¶ 28-30.

The defendant has adequately shown that the redacted information relates solely to the internal personnel rules and practices of the BOP, and the plaintiff does not provide any argument or evidence to the contrary.  *Response*, pp. 19-20.  Therefore, this information was properly redacted.

13

### b.   Exemption (b)(5)

The defendant also applied exemption (b)(5) to redact the internal conclusions and recommendations of staff regarding whether the inmate needed additional protection.  *Vaughn Index*, p. 3; *Declaration of Kara Christensen*, ¶¶ 24-27.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  The defendant does not explain why this information would not be available by law to a party in litigation with the BOP.  Therefore, the defendant has not met its burden of justifying its decision, and it is not entitled to withhold this information under exemption (b)(5).  However, because this information was properly redacted under exemption (b)(2)(High), the information does not need to be disclosed to the plaintiff.

### c.   Exemption (b)(7)(C)

The defendant applied exemption (b)(7)(C) to redact the names of inmates and one staff member referred to in the investigation.  *Vaughn Index*, p. 3.  Exemption (b)(7)(C) authorizes withholding "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

The BOP is a law enforcement agency.  Duffin v. Carlson, 636 F.2d 709, 713 (D.C.Cir. 1980).  BOP employees possess the authority to make arrests, seize evidence, and execute searches on inmates and visitors to the institution.  *Declaration of Kara Christensen*, ¶ 10.  The BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community. Id.  The Memorandum was compiled to address the protection of an inmate.  *Declaration of*

*Kara Christenson* [Doc. #29-2], ¶¶ 25-26.  Therefore, the Investigation Memorandum constitutes information compiled for law enforcement purposes.

"To determine whether Exemption 7(C) applies, [courts] balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  Sussman v. United States Marshals Serv., 494 F.3d 1106, 1115 (D.C.Cir. 2007) (internal quotations and citation omitted).  "Where a legitimate privacy interest is implicated, the requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest."  Id. (internal quotations and citation omitted).

Generally, the privacy interests of third parties are substantial whereas the public interest in disclosure is insubstantial.  SafeCard Servs., Inc. v. Sec. & Exch. Com'n, 926 F.2d 1197, 1205 (D.C.Cir. 1991).  "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed."  U.S. Dept. of Justice v. Reporters Committee for Freedom of Press, 489 U.S. 749, 774 (1989) (emphasis in original). Therefore, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  SafeCard, 926 F.2d at 1206.

The defendant states that exemption (b)(7)(C) was applied to redact the names of inmates and one staff member in the Investigation Memorandum to protect their identities in connection with the investigation because release of their identities could subject them to an unwarranted

invasion of privacy and/or an unanticipated and unwanted injury to their reputation. *Vaughn Index*, p. 3; *Declaration of Kara Christenson*, ¶¶ 22-23.

The protection of the identities of inmates and staff in connection with an investigation into prison gang activities implicates a legitimate privacy interest. See Jimenez v. F.B.I., 938 F.Supp. 21, 29-30 (D.D.C. 1996). The plaintiff does not provide any factual allegations, and certainly no compelling evidence, to show that the names of the individuals are necessary to prove government impropriety. *Response*, pp. 15-16. Therefore, this information was properly withheld.

### d.   Exemption (b)(7)(F)

Exemption (b)(7)(F) authorizes withholding "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(C). The defendant states that exemption (b)(7)(F) was applied to redact the names of inmates referred to in the investigation because revealing their names and their involvement with a gang would reasonably be expected to cause them harm. *Vaughn Index*, p. 3; *Declaration of Kara Christenson*, ¶ 31.

Exemption (b)(7)(F) "affords broad protection to the identities of individuals mentioned in law enforcement files," including the "names and identifying information" of confidential sources. Jimenez v. F.B.I., 938 F.Supp. 21, 30 (D.D.C. 1996). The names of the inmates were properly withheld by the defendant.

## 2.   Document 3

Document 3 is an SIS Staff Memorandum to a Case Management Coordinator ("CMC") which consists of two pages (the "CMC Memoradum").  *Vaughn Index*, p. 4.  Although the defendant does not explain the nature or the purpose of the CMC Memorandum, it is clear from the undisputed material facts that the CMC Memorandum is related to the plaintiff's participation in the investigation of the Aryan Brotherhood and/or safety issues resulting from the participation.

### a.   Exemption (b)(2)(High)

The defendant states that exemption (b)(2)(High) was applied to the CMC Memorandum to redact information concerning internal investigatory details that if released would identify other inmates who have received a CIM assignment.  *Vaughn Index*, p. 4.  As with the Investigation Memorandum, this information is related solely to the internal personnel rules and practices of the BOP and is exempt from disclosure.

### b.   Exemption (b)(7)(C)

The defendant applied exemption (b)(7)(C) to redact the names of inmates referred to in the CMC Memorandum because these individuals have a privacy interest in their identities in connection with the investigation.  *Vaughn Index*, p. 4; *Declaration of Kara Christenson*, ¶ 23. As discussed above, the protection of the identities of inmates and staff in connection with an investigation into prison gang activities implicates a legitimate privacy interest, and the plaintiff does not provide any factual allegations or evidence to show that the names of these individuals are necessary to prove government impropriety.  *Response*, pp. 15-16.

### c.   Exemption (b)(7)(F)

The defendant states that exemption (b)(7)(F) was applied to the CMC Memorandum to redact the names of inmates referred to in the investigation because revealing their names would show their involvement with the Aryan Brotherhood and would reasonably be expected to cause them harm. *Vaughn Index*, p. 4; *Declaration of Kara Christenson*, ¶ 32. As discussed above, exemption (b)(7)(F) "affords broad protection to the identities of individuals mentioned in law enforcement files," including the "names and identifying information" of confidential sources. This information was properly withheld.[4]

### 3.   Document 4

Document 4 is a one page undated note (the "Note") from one BOP staff member to another. *Vaughn Index*, p. 5. The defendant applied exemptions (b)(7)(C) and (b)(7)(F) to redact the names of inmates referenced in the Note because these individuals have a privacy interest in their identities in connection with the investigation and because the Note indicated their involvement with a security threat group, and revealing their names would reasonably be expected to cause them harm. Id.; *Declaration of Kara Christenson*, ¶¶ 23, 33. These exemptions are appropriately applied.

_____

[4]The Vaughn Index shows that exemption (b)(5) was applied to redact staff internal speculation and recommendations. *Vaughn Index*, p. 4. The plaintiff does not challenge the redactions to the CMC Memorandum under exemption (b)(5). *Response*, pp. 17-19. In addition, the Vaughn Index shows that exemption (b)(7)(E) was applied to the CMC Memorandum to redact information that identifies various law enforcement techniques and investigative tools to prohibit inmates from acquiring that information and circumvent safety and security procedures implemented within institutions. *Vaughn Index*, p. 4. The plaintiff does not dispute the application of this exemption. *Response*, pp. 13-19.

In summary, I find that the Vaughn Index identifies the type of information that has been redacted in each document and the applicable exemption.  The Declaration of Kara Christenson expands on the reasoning for each exemption and the applicable law.  This information is sufficient to determine that the disputed redacted portions of the documents were properly withheld.  Accordingly, the defendant has met its burden to  justify its decision to withhold the redacted portions of the documents.

### C.  Claims One and Two

In Claim One, the plaintiff alleges that in violation of FOIA's "clear language and explicit intent of prompt disclosure, in FOIA Request #09-1908, the Bureau of Prisons failed to confirm receipt of the document request, failed to take any action whatsoever on this request, and only after receiving another similar document request several months later was this document request 'administratively closed' as duplicative." *Complaint*, pp. 6-7.  Claim One further alleges that "[t]he Bureau's failure to comply with any of plaintiff's document requests prior to being served with a copy of a civil complaint makes it liable for reasonable attorney fees and other litigation costs incurred by plaintiff in bringing this action before the court."  Id. at p. 7.

Claim Two alleges that the defendant violated FOIA when it denied the plaintiff's requests for expedited processing of his FOIA Request #09-6734.  Id. at pp. 7-9.

The defendant asserts that Claims One and Two are moot because the BOP has responded to all of the plaintiff's FOIA requests.  "Once the government produces all the documents a plaintiff requests, [the plaintiff's] claim for relief under the FOIA becomes moot." Anderson v. U.S. Dept. of Health & Human Services, 3 F.3d 1383, 1384 (10th Cir. 1993).  See

also Perry v. Block, 684 F.2d 121, 125 (D.C.Cir. 1982) (stating that "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform). "The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant." Hornbostel v. U.S. Dept. of Interior, 305 F.Supp.2d 21, 28 (D.D.C. 2003), *aff'd*, 2004 WL 1900562 (D.C. Cir. Aug.25, 2004) (citation and internal quotation marks omitted).

### D. Claim Four

In Claim Four, the plaintiff complains about documents he did not receive in response to his FOIA Request #09-6734. *Complaint*, p. 13. These complaints are redundant of the allegations made in Claim Three.

In addition, the plaintiff challenges the BOP's denial of FOIA Request #07-5059 under Exemption (b)(7)(A). In FOIA Request #07-5059, the plaintiff requested copies of any notes taken by SIS Dell and SIA Crist during his interview at ADX on November 17, 2006, and a copy of a hand-written fourteen page statement he submitted to the officers on or about November 20, 2006. It is undisputed that the documents responsive to Request #07-5059 were disclosed to the plaintiff in response to his FOIA Request #09-6734. Therefore, this claim is moot. Anderson, 3 F.3d at 1384.

### V. CONCLUSION

I respectfully RECOMMEND that the Motion for Summary Judgment [Doc. # 48] be GRANTED and that summary judgment enter in favor of the defendant on all of the plaintiff's claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.   United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 7, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge